PHILLIP A. TALBERT
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                    Plaintiff,

            v.

Nine, more or less, 50-pound permeable triple layer brown paper bags, of an article of food, labeled in part:

"***Honeyville FINE WHITE RICE FLOUR HIGH QUALITY PRODUCTS & INGREDIENTS NET WT. 50 LBS. (22.68 KG) U***70291-HG LONG GRAIN WHITE FINE RICE FLOUR NET WT. 50 LBS LOT#: 30401 MFG DATE: 10/30/20 EXP DATE: 10/30/21*** DISTRIBUTED BY: HONEYVILLE, INC. RANCHO CUCAMONGA, CA 91730 909.980.9500 HONEYVILLE, UT 84314 435.494.4200 OGDEN, UT 84404 385.374.9400 PHOENIX, AZ 85226 480.785.5210***71721 1H-T0879-01 9/20 ***",

Thirty-eight, more or less, 55-pound permeable white plastic woven bags, of an article of food, labeled in part:

"***VATIKA URAD GOTA WEIGHT: 25 KGS (55 LBS) PRODUCT OF MYANMAR***",

Forty-four, more or less, 55-pound permeable white plastic woven bags, of an article of food, labeled in part:

VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

1

"***URAD GOTA WEIGHT: 25 KGS (55 LBS) PRODUCT OF MYANMAR***Black Matpe Skinned & Whole***",

Twenty-four, more or less, 55-pound permeable white plastic woven bags, of an article of food, labeled in part:

9mm Kabuli Lot # DSP K16111 Net Weight When Packed 55lbs (24.95kg) Product of Canada***Diefenbaker Spice & Pulse, Elbow Saskatchewan, Canada S0H 1J0***", and

all other articles of food labeled or unlabeled or affixed with labels bearing, among other thing, the name and address of the manufacturer, packer, or distributor located outside the State of California, or which are otherwise determined to consist in whole or in part of components that have originated from outside the State of California and, in any size, or type container (excluding metal and glass containers) located anywhere on the premises of Gold Coast Distributors, Inc., 2325 W. Charter Way, Stockton, California,

Defendants.

---

The United States of America, by and through its undersigned attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

## NATURE OF ACTION

1. This is a civil action *in rem* to seize, condemn, and forfeit to the United States the articles of food described in the caption (hereafter "defendant food") pursuant to the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. §§ 301, *et seq*.

2. The defendant food is in the possession of Gold Coast Distributors, Inc. at 2325 W. Charter Way, Stockton CA.

## JURISDICTION AND VENUE

3. The United States brings this action *in rem* to condemn and forfeit the defendant food. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and 21 U.S.C. § 334.

2

4.     This district is a proper venue pursuant to 28 U.S.C. § 1355, 28 U.S.C. § 1395(b), and 21 U.S.C. § 334(a)(1) because the defendant food is located in this district.

## BASIS FOR FORFEITURE

5.     The defendant food is food within the meaning of the Act, 21 U.S.C. § 321(f)(1).

6.     The defendant food is adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, while held for sale (whether or not the first sale) after shipment in interstate commerce.

7.     By reason of the foregoing, the defendant food is being illegally held within the jurisdiction of this Court and is liable to seizure, condemnation, and forfeiture pursuant to 21 U.S.C. § 334.

## FACTUAL ALLEGATIONS

8.     Gold Coast Distributors, Inc. ("Gold Coast Distributors" or the "firm") is an importer, ambient and frozen food storage warehouse, re-packer, and/or distributor of ready-to-eat ("RTE") and non-RTE prepacked food products.

9.     In a previous inspection of Gold Coast Distributors, conducted between May 9 and May 27, 2022, the United States Food and Drug Administration ("FDA") found significant evidence of rodent, insect, and cat activity throughout the entire facility, including food storage areas.  On November 2, 2022, FDA issued a Warning Letter based on the inspectional and analytical findings, conveying FDA's concerns regarding the potential public health hazard of ongoing active rodent and insect activity, warning that these violations caused products stored at the facility to be adulterated, and failure to take prompt action to correct or implement corrections to violations cited in the letter may result in legal action without further notice, including, without limitation, seizure, injunction, or administrative action for suspension of food facility registration if criteria and conditions warrant. FDA requested that the firm provide information about specific steps they have taken to address the violations, including an explanation of each step taken to prevent the recurrence of violations, as well as supporting documentation.  On November 16, 2022, the firm submitted a written response, identifying corrective actions implemented to address the Warning Letter violations.

10.     From May 16 to June 8, 2023, FDA conducted a follow-up inspection of Gold Coast Distributors ("the 2023 inspection").  The 2023 inspection revealed the firm failed to implement adequate corrective actions, as evidenced by the egregious insanitary conditions which continue to exist within the facility one year later.

11.     At the end of the 2023 inspection, FDA investigators issued a Form FDA-483, Notice of Inspectional Observations, to the firm's consultant, who represented herself as being the most responsible person at Gold Coast Distributors at the time of the inspection, notifying the firm about two objectionable conditions ("observations").  Specifically, FDA observed the following violations of the current good manufacturing practice requirements for food, 21 C.F.R. Part 117, which demonstrates that the defendant food is adulterated under the Act, 21 U.S.C. § 342(a)(4), because it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth.  *See* 21 C.F.R. § 117.1(a)(2):

a.     The firm has not taken effective measures to exclude pests from the packing and holding areas and to protect against contamination of food on the premises by pests (21 C.F.R. §117.35(c)).

b.     The firm stores and transports food under conditions that will not protect against physical contamination of food, as well as deterioration of the food and the container (21 C.F.R. § 117.93).

12.     During the 2023 inspection, FDA investigators also observed that the firm's buildings, fixtures, and other physical facilities are not maintained in a clean and sanitary condition and are not kept in repair adequate to prevent food from becoming adulterated (21 C.F.R. § 117.35(a)).  For example, FDA investigators observed building flaws including a 4 inch by ¾ inch gap approximately one foot above the floor located along the vertical junction between aluminum wall panels of an exterior building wall.  The size and location of this gap is vulnerable to rodent and insect ingress and egress into the building from outside.

13.     FDA investigators also observed widespread rodent infestation at the firm including, but not limited to: (i) two dead rodents; (ii) hundreds of rodent excreta pellets in, on, and around pallets of food products; (iii) approximately ten rodent excreta pellets inside an open case containing loose dried

beans; (iv) rodent excreta pellets on the floor and on pallets holding repacking equipment; (v) rodent nesting material on a case of a food pallet; and (vi) flooring with stains characteristic of rodent urine.

14.     FDA investigators collected two samples of filth from in, on, and around pallets containing cases of food and on the floor of the warehouse adjacent to stored food products.  FDA's laboratory analyses confirmed the presence of rodent excreta pellets, rodent hair, nesting material, various insects, and insect fragments in the collected samples.

15.     FDA investigators also observed widespread insect activity including, but not limited to: (i) live and dead insects inside an open case containing loose dried beans and grains; (ii) live and dead insects on and around pallets of food products; and (iii) at least twenty dead winged insects and beetles in the hopper and on the repacking apparatus conveyor belt.

16.     FDA investigators collected four samples of filth directly from food products.  FDA's laboratory analyses of the samples confirmed the presence of dead and live insects, dead and live larvae, larvae molt skin, dead pupae, insect bore holes, rodent excreta pellets, and rodent hair.

17.     Seizure of the defendant food, which is adulterated under the Act, is necessary to prevent further distribution of the defendant food to consumers.

## FIRST CLAIM FOR RELIEF
### 21 U.S.C. § 334

18.     The above paragraphs are incorporated by reference as though fully set forth herein.

19.     The United States alleges that the defendant food is adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, while held for sale (whether or not the first sale) after shipment in interstate commerce.  By reason of the foregoing, the defendant food is being illegally held within the jurisdiction of this Court and is liable to seizure, condemnation, and forfeiture pursuant to 21 U.S.C. § 334.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1.     A warrant to arrest the defendant food be issued according to the procedures of this Court in cases of actions *in rem*;

2.      Any person having an interest in said defendant food be given notice to file a claim and to answer the complaint;

3.      The Court enter a judgment of condemnation against the defendant food and grant the United States the cost of this proceeding against the claimant of the defendant food;

4.      The defendant food be disposed of according to law; and

5.      The Court grant such other relief as may be proper.

Dated: 9/8/2023                                                    PHILLIP A. TALBERT
                                                                   United States Attorney


                                                        By:    /s/ Kevin C. Khasigian
                                                               KEVIN C. KHASIGIAN
                                                               Assistant U.S. Attorney

**VERIFICATION**

I, Kimberly M. Lichter, hereby verify and declare under penalty of perjury that I am a Compliance Officer with the Food and Drug Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, as well as my investigation of this case, together with others, as a Compliance Officer, Office of Human and Animal Foods Division West 5, United States Food and Drug Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:  9/8/2023

                                       /s/ Kimberly M. Lichter
                                       KIMBERLY M. LICHTER
                                       Compliance Officer
                                       Food and Drug Administration
                                       U.S. Department of Health and Human Services

                                       (Signature retained by attorney)